UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STARR INDEMNITY & LIABILITY COMPANY | * * * | CIVIL ACTION NO. |
| VERSUS | * * | JUDGE |
| CAMPBELL TRANSPORTATION COMPANY, INC. AND D&S MARINE SERVICE, LLC | * * * * | MAG. JUDGE |
| * * * * * * * * * * * * * * * * * | | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to 28 U.S.C. §2201, *et seq.*, and Fed. Rule Civ. Proc. 57, Plaintiff, Starr Indemnity & Liability Company ("Starr"), files this Complaint for Declaratory Judgment against Defendants, Campbell Transportation Company, Inc. ("Campbell") and D&S Marine Service, LLC ("D&S") (sometimes collectively referenced as "Defendants"), and alleges as follows.

## INTRODUCTION

1. This case involves a marine insurance dispute regarding whether Defendants are entitled to coverage under Starr's Comprehensive Marine Liability Policy No. MASILNY 00004121 issued to Campbell for policy period October 1, 2021 to October 1, 2022 (the "Starr Policy"), which provides certain marine liability/ship repairer's liability/wharfinger's liability/charterer's liability coverage. A certified copy of the Starr Policy is attached hereto as Exhibit "A."

2. A justiciable controversy exists between Starr and Defendants as to whether Starr has a duty to indemnify Campbell and/or a duty to defend and indemnify D&S under the Starr Policy in connection with personal injury claims asserted by Michael Wallace, a Campbell employee, against D&S in the matter filed on April 22, 2024 entitled *Michael Wallace v. D&S*

*Marine Service, LLC and AccuTrans Fleeting Services, LLC*, pending in the District Court of Harris County, Texas, Docket No. 2024-25798 (the "*Wallace* Lawsuit") and the claims asserted by Wallace and AccuTRANS Fleeting Services, LLC ("AccuTRANS") against D&S in the Limitation of Liability lawsuit filed by D&S entitled *Complaint of D&S Marine Service, LLC*, filed in the United States District Court for the Southern District of Texas, Civil Action No. 4:24-cv-4075 (the "Limitation Action"). Campbell has not been sued by any party in connection with Wallace's injuries.

3. D&S tendered the *Wallace* Lawsuit to Campbell pursuant to the indemnity provisions of a September 9, 2021 Fully Found Charter entered into between D&S and Campbell (the "Charter"). Campbell reportedly accepted D&S's tender and thereafter tendered the claim to Starr for coverage. On or about May 30, 2024, Starr denied coverage to Campbell for its alleged contractual liability to D&S.

4. D&S, through Campbell, tendered the *Wallace* Lawsuit to Starr as an additional insured under the Starr Policy pursuant to the insurance provisions of the Charter. Starr initially declined defense and coverage, but on July 2, 2024 agreed to provide D&S a defense under a reservation of rights in the *Wallace* Lawsuit.

5. Since the filing of the *Wallace* Lawsuit, D&S filed the Limitation Action, pursuant to 46 U.S.C. §30501, *et seq*., seeking exoneration from or limitation of liability for any claims arising out of Wallace's accident and injuries. Wallace and AccuTRANS filed claims against D&S in the Limitation Action. Starr is providing D&S a defense under a reservation of rights in the Limitation Action.

6. Starr brings this Complaint to obtain a declaration regarding the existence and extent of its duties to D&S under the Starr Policy in connection with the claims asserted in the

*Wallace* Lawsuit and the Limitation Action and the existence and extent of its duties to Campbell under the Starr Policy in connection with its purported contractual liability (indemnity) to D&S.

## THE PARTIES

7. Starr is a Texas corporation with its principal place of business located at 399 Park Avenue, New York, New York 10022.

8. Campbell is a Pennsylvania corporation with its principal place of business located at 4600 J Barry Court, Suite 400, Canonsburg, Pennsylvania 15317.

9. D&S is a Louisiana limited liability company with its principal place of business at 222 Trinity Lane, Gray, Louisiana 70359.

## JURISDICTION AND VENUE

10. This Court has original subject matter jurisdiction over this marine insurance action pursuant to 28 U.S.C. §1333, and this is an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure 9(h).

11. Venue is proper in this Court under 28 U.S.C. §1391(b)(1) because one or more Defendants reside in this district.

## FACTUAL BACKGROUND OF MICHAEL WALLACE'S CLAIMS

12. This factual background is based upon the allegations of Plaintiff's Original Petition filed in the *Wallace* Lawsuit and the claims filed in D&S's Limitation Action.

13. On or about December 18, 2021, Wallace was employed by Campbell as a barge inspector and was being transported aboard the ANNA MICHAEL, an inland towboat owned/operated by D&S, to a fleet operated by AccuTRANS in Channelview, Texas. While at or approaching the AccuTRANS dock, Wallace was on the fleet deck of the ANNA MICHAEL when he fainted, fell to the water, and was allegedly injured.

14. Wallace brought claims against D&S as owner/operator of the ANNA MICHAEL and against AccuTRANS as owner/operator of the fleet.

15. Wallace's claims against D&S in the *Wallace* Lawsuit and in the Limitation Action are based upon the alleged lack of a safety chain or other safety device to prevent someone from falling from the fleet deck, which Wallace alleges was in violation of 46 CFR §144.800(a). Wallace asserts claims against D&S for negligence (under the general maritime law and alternatively under 33 U.S.C. §905(b)) and negligence *per se*. Wallace also asserted a claim for punitive damages against D&S, though he appears to have dropped that claim, at least in his First Amended Claim filed in the Limitation Action. D&S denied any liability to Wallace for his accident and injuries.

16. Wallace's claims against AccuTRANS are based upon alleged inadequate lifesaving and/or safety equipment which delayed retrieving Wallace from the water. Wallace asserts claims against AccuTRANS for negligence and gross negligence. Wallace also asserts a claim for punitive damages against AccuTRANS. AccuTRANS denied any liability to Wallace for his accident and injuries.

17. AccuTRANS asserted a claim against D&S in the Limitation Action seeking indemnity/contribution from D&S if AccuTRANS is found liable for Wallace's alleged injuries and for AccuTRANS's own alleged damages for loss of use of its fleeting facility as a result of Wallace's accident.

**THE CHARTER**

18. The Charter places certain requirements on D&S with regard to the maintenance and operation of the ANNA MICHAEL.

> FULLY FOUND CHARTER: [D&S] shall furnish a qualified, adequately licensed, master and crew and shall carry out assignments for [Campbell]

4

> and/or clients for whom [Campbell] may be working with reasonable diligence. The master and crew shall at all times be the servants and employees of [D&S] and not of [Campbell]. The recruitment, supervision, discharge and discipline of the Vessel's crew and all other personnel employed by [D&S] shall be the sole and exclusive responsibility of [D&S]. [D&S] shall provide all supplies, food and items, safety equipment or gear required to operate the Vessel. While operating the Vessel under this Charter, [D&S] shall act solely as an independent contractor and shall have exclusive command, possession and control of the Vessel and in every particular method and manner of performing towing operations, and shall be responsible for the direction, recruitment, discharge, discipline and supervision of the master and crew of the Vessel. This Charter shall not be construed as a demise of the Vessel. (¶14)
>
> WARRANTIES: [D&S] warrants that the Vessel shall be controlled and operated by [D&S] and shall upon delivery be in all respects seaworthy, properly manned, inspected, permitted, equipped and supplied and shall be so maintained at all time[s] thereafter by [D&S]… (¶15).

19. The Charter has certain indemnity provisions for both Campbell and D&S.

    > INDEMNITY: [D&S] agrees to indemnify, hold harmless and defend [Campbell] . . . against any claims, liabilities, losses and expenses (including reasonable attorneys' fees) arising in any way out of [D&S's] operation of the Vessel authorized hereunder or out of any at or omission of [D&S] in relation to said towage whether or not authorized hereunder . . .
    >
    > \*   \*   \*
    >
    > [Campbell] agrees to indemnify, hold harmless and defend [D&S], its employees, officers, directors and the Vessel against any claims, liabilities, losses and expenses (including reasonable attorneys' fees) arising out of [Campbell's] failure to perform or comply with this Agreement or any breach by [Campbell] of any legal duties that [Campbell] may owe [D&S] under maritime law.  Further, in the event that any of [Campbell's] employees, invitees, or subcontractors (excluding [D&S]) ("Charterer Group") is on the Vessel and/or its tow, [Campbell] agrees to indemnify, hold harmless and defend [D&S] . . . against any claims, liabilities, losses and expenses (including reasonably attorneys' fees) arising in any way out of Charterer Group's presence on the Vessel and/or its tow. (¶23)

20. The Charter has the following relevant insurance provision.

    > OWNER'S INSURANCE:  [D&S] shall carry the following insurance coverage at its sole expense for the entire term of this agreement and

extensions or renewals thereof with generally acceptable insurance companies.

\* \* \*

b.      Protection and Indemnity insurance subject to not less than the terms and conditions of the P&I SP-23 (Revised 1/56) form of policy including and pollution Buy-Back Endorsement.

\* \* \*

d.      Excess Liability insurance including excess Protection and Indemnity Excess Tower's, Excess Collision and excess Pollution insurance subject to a limit of not less than Fifty Million Dollars ($50,000,000) any one accident or occurrence, it being understood and agreed that this limit may apply to [D&S's] entire fleet of vessels. The specified limit of lability may be in any combination of primary and excess insurance.

\* \* \*

g.      With respect to the coverage specified above the policies shall be endorsed to provide:

> i.      [Campbell] and its parent, affiliated and subsidiary companies as an Additional Assured with a full waiver of subrogation. . . (¶21)

\* \* \*

CHARTERER'S INSURANCE: [Campbell] shall, at its own expense, procure and maintain during the term of this Agreement the following insurance coverage.

a.  Charterer's liability insurance coverage.

b.  Comprehensive General Liability insurance including Contractual Liability and Cross Liability provisions.

c.  The coverage specified in (a) and (b) above shall provide a limit of liability of not less than $10,000,000 per occurrence, or in the aggregate as respects to the Comprehensive General Liability policy. The specified limit of liability may be in any combination of primary and excess insurance. [Campbell] shall be liable for all claims falling in the deductible to the same extent as if it had been the insurer on the policy to which deductible applies.

d.  With respects [sic] to the above insurance specified in items (a) and (b) above the following provisions shall apply: [D&S] and its affiliated companies and/or other entities (each an "Owner Assured"), shall be

6

named as additional assured with a full waiver of subrogation against said parties and any vessels towed hereunder. Such naming and waiving shall not affect any rights of recovery [D&S] or any Owner Assured would otherwise be entitled to in the absence of such provisions. (¶22)

21. The Charter has a maritime law choice of law provision. And disputes regarding the Charter are to be brought exclusively in this Court. (¶27)

## THE STARR POLICY

22. The Starr Policy provides certain liability coverage to Campbell and parties qualifying as additional insureds. Relevant portions of the Starr Policy are set forth below.

### COVERAGE (page 10 of 47)

**I.    Coverage A – Bodily Injury Liability Coverage B – Property Damage Liability**

The company will pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay as damages because of

      A.    bodily injury, or
      B.    property damage

to which this insurance applies, caused by an occurrence, . . .

**Exclusions**

**This insurance does not apply:**

(a)    to liability assumed by the assured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named assured's products or a warranty that work performed by or on behalf of the named assured will be done in a workmanlike manner

\* \* \*

(e)    to bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of:

    (1) any watercraft owned or operated by any assured; or
    (2) any watercraft operated by any person in the course of his employment by any assured; but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the named assured;

## **DEFINITIONS** (page 7 of 47)

**"INCIDENTAL CONTRACT"** means any written (1) lease of premises, (2) Easement Agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by a municipal ordinance, except in connection with the municipality, (4) Sidetrack Agreement, or (5) Elevator Maintenance Agreement; (page 8 of 47)

\* \* \*

## **BROAD FORM LIABILITY ENDORSEMENT** (page 15 of 47)

### **CONTRACTUAL LIABILITY COVERAGE**

(A) The definition of incidental contract is extended to include any oral or written contract or agreement related to the conduct of the Named Assured's business.

\* \* \*

(C) The following exclusions applicable to coverage A (Bodily Injury) and B (Property Damage) do not apply to this Contractual Liability Coverage: (b), (c)(2), (d) and (e).

\* \* \*

### **ACTION OVER/INDEMNITY BUYBACK – 'OCCURRENCE' – 1.10.86**

In consideration of the premium charged hereunder, it is understood and agreed that this policy, subject to all its terms, conditions, warranties, and limit of liability, is endorsed to indemnify the Assured for amounts for which it shall have become liable to pay and shall have paid on account of investigation, defense and indemnity as respects it responsibilities, if any, to third parties by virtue of defense and indemnity obligations assumed under written contract or agreement and arising from accidental death of or bodily or personal injury to or illness of any employee(s) of the Assured, except insofar as same may arise from occupational disease.

**ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED**

\* \* \*

## **CHARTERER'S LIABILITY** (page 29 of 47)

1. Amount insured each vessel: **$As Per Declarations** (being **100%** participation) part of **$As Per Declarations** excess of **$25,000** any one loss, accident or occurrence each vessel, except **$75,000** as respects Pollution.

   This insurance shall be liable only for the excess over and above **$25,000** in respect of claims, including legal expenses, arising out of any one loss, accident or occurrence each vessel, except **$75,000** as respects Pollution

   \* \* \*

3. This insurance covers the legal and/or contractual liability of the Assured as Charterer (other than Bareboat and/or Demise Charterer) in respect to the vessel(s) insured hereunder for any loss, damage and/or expense including but not limited to demurrage and/or removal of wreck and/or Collision Liability and/or any other consequential loss or damage, resulting from any accident in which said vessel(s) may be involved.

   Including Protection and Indemnity risks as defined in Protection and Indemnity form SP-23 (Revised 1/56) with the Limitation Clause therein deleted, but excluding all liability for loss of or damage to cargo carried aboard the vessel(s) insured hereunder.

   \* \* \*

6. The Assurers shall not be liable for any loss, damage, and/or expense which may be recoverable under any other insurance carried by the Assured, except as an excess over and above the amount fully recoverable thereunder.

   \* \* \*

**ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED**

\* \* \*

## **BLANKET ADDITIONAL ASSURED ENDORSEMENT** (page 36 of 47)

Effective on the date shown above and in consideration of an Additional Premium as shown above, it is hereby understood and agreed that this endorsement modifies insurance provided under the policy to which this is attached:

9

    **A.**    **Section 5 – WHO IS AN ASSURED** is amended to include as an additional assured the persons(s) or organization(s) whom the Named Assured has agreed to include as an Additional Assured hereunder, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part by the Named Assured's acts or omissions or the acts or omissions of those acting on behalf of the Named Assured:

    1.    In the performance of the Named Assured's operations; or

    2.    In connection with premises owned by or rented to the Named Assured.

However:
1. The insurance afforded to such additional assured only applies to the extent permitted by law; and
2. The coverage provided to the additional assured must be required by a written contract or agreement and the insurance afforded to such additional assured will not be broader than that which the Named Assured is required by the contract or agreement to provide for such additional assured; and
3. Unless specifically required by written contract or agreement executed prior to any occurrence, coverage afforded under this clause shall exclude coverage for any claims alleging negligence or any other fault on the part of the additional assured.

* * *

**D.**    Notwithstanding Section 7, Clause #5 – OTHER INSURANCE, coverage under this policy afforded to the Additional Assured shown above will apply as primary insurance where required by written contract, and any other insurance issued to such Additional Assured shall apply as excess and noncontributory insurance.

This endorsement shall not increase the applicable Limit of Liability shown in the Declarations.

**ALL OTHER TERMS, CONDITIONS, LIMITATIONS AND EXCLUSIONS REMAIN UNCHANGED**

* * *

**SPECIAL CONDITIONS AND WARRANTIES** (page 4 of 47)

\* \* \*

11. **OTHER INSURANCE:** If other valid and collectible insurance with any other Insurer is available to the Assured covering a loss also covered by this policy, other than Insurance that is excess of the Insurance afforded by this Policy, the Insurance afforded by this Policy shall be in excess of and shall not contribute with such other Insurance, either as double Insurance or otherwise. Nothing herein shall be construed to make this Policy subject to the terms and conditions and limitations of other Insurance. (page 5 of 47)

\* \* \*

13. **PUNITIVE DAMAGE EXCLUSION:** It is understood and agreed that this insurance shall not cover any fines, penalties, punitive damages, treble damages or any other damages resulting from the multiplication of compensatory damages. (page 6 of 47)

23.     Starr reserves the right to assert the notice provisions set forth above unless additional facts support that notice was timely and to assert the other insurance clause if the Court determines that Starr has a duty to defend or indemnify D&S. Starr also reserves the right to rely upon other applicable provisions of the Starr Policy not cited herein.

**COUNT I**
**NO DUTY TO INDEMNIFY CAMPBELL FOR ITS CONTRACTUAL LIABILITY**

24.     Starr reasserts and incorporates by reference each allegation contained in paragraphs 1-22 above, as if fully set forth herein.

25.     Pursuant to 33 U.S.C. §905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), the indemnity provisions of the Charter are void and unenforceable. Thus, because the indemnity provisions are void and do not create an obligation Campbell is legally obligated to pay, there is no coverage under the Starr Policy.

26. Alternatively, even if the LHWCA does not void the indemnity provisions, which is denied, the indemnity provisions do not cover D&S for its own purported fault or negligence. As such, the indemnity obligations are not triggered because D&S only seeks indemnity for its own alleged fault or negligence. Thus, because the indemnity provisions are not triggered, there is no obligation that Campbell is legally obligated to pay; and the Starr Policy does not provide coverage.

27. In the further alternative, even if the indemnity provisions are enforceable and include D&S's own fault and negligence, which is denied, D&S's insurance obligations in favor of Campbell as an additional insured under D&S's policies of insurance must be exhausted before any indemnity is owed by Campbell.

28. Starr reserves the right to rely upon any other term or condition of the Starr Policy regarding its obligation to Campbell.

29. Starr is entitled to a judicial declaration that it has no obligation under the Starr Policy to indemnify Campbell for its purported contractual liability to D&S for Wallace's claims against D&S.

## COUNT II
## NO DUTY TO DEFEND OR INDEMNIFY D&S AS AN ADDITIONAL INSURED

30. Starr reasserts and incorporates by reference each allegation contained in paragraphs 1-28 above, as if fully set forth herein.

31. Under the Blanket Additional Insured Endorsement (the "AI Endorsement") and pursuant to the Charter, D&S's coverage as an additional insured under the Starr Policy is limited. Coverage under the AI Endorsement does not include the alleged negligence or fault of the additional insured, here D&S, unless "specifically required by written contract or agreement

executed prior to any occurrence . . ." There is no requirement in the Charter that Campbell obtain additional insured coverage for D&S for its own negligence or fault. The allegations against D&S in the *Wallace* Lawsuit and in the Limitation Action are only for D&S's alleged negligence or fault. Thus, the additional insured coverage provided to D&S does not cover the claims asserted against D&S in the *Wallace* Lawsuit or in the Limitation Action.

32. In the alternative, the AI Endorsement and coverage is subject to the watercraft exclusion, which precludes coverage for the claims asserted against D&S in the *Wallace* Lawsuit and in the Limitation Action.

33. In the further alternative, even if D&S has coverage as an additional insured for the claims asserted against D&S in the *Wallace* Lawsuit and in the Limitation Action, which is denied, D&S's insurance obligations in favor of Campbell as an additional insured under D&S's policies of insurance must be exhausted before D&S is entitled to coverage as an additional insured under the Starr Policy.

34. Because there is no coverage to D&S as an additional insured for the claims alleged against D&S in the *Wallace* Lawsuit or the Limitation Action, there is no duty to defend D&S in either lawsuit.

35. Starr reserves the right to rely upon any other term or condition of the Starr Policy regarding its obligation to D&S.

36. Starr is entitled to a judicial declaration that it has no obligation under the Starr Policy to defend or indemnify D&S for the claims asserted against D&S in the *Wallace* Lawsuit or the Limitation Action.

## COUNT III
## PUNITIVE DAMAGES EXCLUSION

37. Even if the Court finds that it cannot determine the extent coverage for either Campbell or D&S under Counts I and II above at this time, which Starr submits it can, the Starr Policy unequivocally excludes punitive damages. Thus, to the extent that any party is still seeking coverage for punitive damages, there is no coverage to Campbell or to D&S for punitive damages.

38. Starr is entitled to a judicial declaration that it does not cover any claims for punitive damages, either to Campbell or to D&S as an additional insured.

## PRAYER FOR RELIEF

**WHEREFORE,** Starr prays for a declaration that there be a judgment entered in its favor declaring (1) the Starr Policy does not cover Campbell for its alleged contractual liabilities to D&S under the Charter; (2) the Starr Policy does not provide coverage to D&S for the claims asserted against it in the *Wallace* Lawsuit or the Limitation Action; and (3) Starr has no duty to defend or continue to pay the legal expenses of D&S in the *Wallace* Lawsuit or the Limitation Action. Starr further submits that, in the alternative, if the Court cannot determine coverage for some of the claims at this time, which is denied, the Court should declare that the Starr Policy does not cover punitive damages.

Starr prays for such other relief as this Court is deems appropriate and is competent to grant.

Respectfully Submitted,

WAGNER, BAGOT & RAYER, LLP

/s/ *Thomas A. Rayer, Jr.*
_____
THOMAS A. RAYER, JR. (#20581)
MICHAEL H. BAGOT, JR. (#2665)
CHRISTIAN J. ST. MARTIN (#38900)
601 Poydras Street, Suite 1660
New Orleans, LA 70130
Telephone: (504) 525-2141
Facsimile:  (504) 523-1587
E-mail:     trayer@wb-lalaw.com
            mbagot@wb-lalaw.com
            cstmartin@wb-lalaw.com

**Attorneys for Starr Indemnity & Liability Company**